GEORGE H. PEASLEE, as Executor, etc., of HORACE W. PEASLEE, Deceased, Appellant, v. THE TOWN OF CHATHAM, Respondent.

*Negligence — submission of the question to the jury — evidence of freedom from contributory negligence.*

To warrant the submission to the jury of the issues in an action brought to recover damages for the death of a person, alleged to have been caused by the negligence of the defendant (as, *e. g.*, the negligence of a town in failing to place a suitable railing on a bridge which it is bound to maintain as a part of the highway), it is not enough that the evidence would justify the submission of the question of the defendant's negligence, but there must also be such evidence upon the question of the decedent's freedom from contributory negligence as will authorize the jury to find from it that the decedent was free from contributory negligence.

APPEAL by the plaintiff, George H. Peaslee, as executor, etc., of Horace W. Peaslee, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of Columbia county on the 16th day of September, 1891, upon a dismissal of the complaint directed by the court at the close of the plaintiff's case on a trial at the Columbia Circuit.

*Charles M. Hall* and *J. Rider Cady*, for the appellant.

*George K. Daley, R. E. Andrews* and *L. F. Longley*, for the respondent.

MAYHAM, P. J.:

This is an appeal from a judgment entered upon a nonsuit granted by a judge at the Columbia Circuit.

The action was prosecuted by the plaintiff against the defendant to recover for the alleged negligence of the defendant in failing to place a suitable railing along the outer side of a bridge over the Kinderhook creek, which the defendant was bound to maintain as a part of a public highway in that town, by reason of which the plaintiff's testator fell from the bridge and was killed.

The evidence discloses that the plaintiff's testator, for many years previous to his death, resided at Malden Bridge in the town of Chatham, where he owned or operated two paper mills and a farm.

That he resided on the opposite side of the creek from that on

which his mills were located, and that access from his residence to the mills was over an iron bridge of about 160 feet in length, having two spans of eighty feet each, and which had stood there since about 1869 in substantially its present condition.

The testator at the time of the accident was seventy-eight years of age, active and in good health. The bridge was supported by two iron arches, the ends of which passed through the floor and rested on abutments, and at the corner where the alleged accident occurred, the distance from where the arch passed through the floor to the corner of the bridge was about five and one-half feet, and from the point where such arch passed through the floor of the bridge to the corner of the same there has never been any railing. There are two driveways across the bridge with a dividing curve of a few inches in height above the floor, and the same kind of coping extends along the sides of the bridge the whole length of the same, extending from the corner of the bridge along the creek, and connecting with the abutment of the bridge is a wall built by the testator on his own land, called a wing wall, which is about a foot lower than the bridge, and along the outer side of this wall there is no railing or barrier.

The proof shows that the testator was for many years accustomed to pass across this bridge from his house to the mills, and return several times a day, and also in the evening of almost each day.

The case does not disclose that any accident had ever happened at this point in the bridge. It appears to have been a custom of this intestate to visit his mills in the evening, and on Sunday evening of the eleventh of January, at about five o'clock, which at that season of the year was after sundown, the deceased left his house and went to the mill, taking with him no lantern; as the evening advanced it became very dark and rainy, so that others who crossed the bridge testify that they carried lanterns. The evidence does not disclose the whereabouts of the deceased from the time he went to the mill at about five P. M., until his groans attracted attention at half-past eight, and he was found seated against the abutment of the bridge in or near the bed of the creek at the base of the abutment. The evidence shows that the commissioners of highways of the defendant had funds with which they might, if they desired, or deemed it necessary, have constructed a railing on this part of the

bridge near which the testator was found. No complaint appears to have been made to the commissioners that this was a dangerous place, or that the public safety required the construction of a railing at that point.

At the conclusion of the testimony the defendant asked the court to dismiss the complaint upon the following grounds :

"*First.* The plaintiff has failed to show any act of negligence on the part of the defendant, the town of Chatham.

"*Second.* There is no evidence whatever authorizing the jury to find that the deceased was free from negligence contributing to cause the injury complained of."

In granting the nonsuit on this motion we think the learned trial judge decided correctly. The absence in the proof of either of the essential elements, which the plaintiff must affirmatively establish to enable him to recover in this class of actions, is always fatal to his rights of recovery.

He must show by competent proof, first the negligence of the defendant, and second, that the injured party was himself free from contributory negligence.

In this case the learned judge held that the proof was sufficient to justify the submission of the question of the defendant's negligence to the jury, but that alone would not justify a recovery. The other elements must also be proved.

There must, upon the other branch, be such evidence as will authorize the jury to find from it, that the plaintiff's testator was free from contributory negligence. Harshly as this rule may seem to operate in some cases, it is nevertheless too thoroughly crystalized into our jurisprudence to be ignored or questioned.

In *Cordell* v. *N. Y. C., etc.* (75 N. Y. 330), the rule is reiterated by EARL, J., in the following emphatic language : " To maintain this action the plaintiff must show that the death of the intestate was caused *solely* by the negligence of the defendant, and this she must show by competent proof. It must not be left to mere speculation. She has the burden upon the whole case to *show* that the negligence of the intestate *did not* in any degree contribute to the accident."

In *Reynolds* v. *N. Y. C., etc.* (58 N. Y. 248), the court, per ANDREWS, J., say : " We think this judgment must be reversed, on

the ground that there was no evidence in the case upon which the jury was authorized to find the absence of negligence on the part of the plaintiff's intestate which contributed to his death." " The jury must be authorized to find affirmatively that the person injured was free from fault which contributed to the accident, or the action is not maintained. If this element is wanting in the case the court may nonsuit or set aside a verdict for the plaintiff. This rule is now too firmly settled in this State to be disturbed."

And in *Connolly* v. *Knickerbocker Ice Co.* (114 N. Y. 104), the court, per BRADLEY, J., say : " The further question is whether *it appeared* that the plaintiff exercised the care required of him. The burden was with him *to make it so appear by evidence.*"

In *Bond* v. *Smith et al.* (113 N. Y. 378), the plaintiff's intestate fell down an areaway in an alley where he was employed as a watchman. The area was protected only by a stone coping a few inches high. The evidence showed that the intestate had passed this area more than 200 times since he had been on duty in the alley. The court, per EARL, J., said : " There is not the least evidence showing how the accident happened. When he was found and taken out, he gave no account of it. * * * The alley was not lighted on that night, and as all the buildings were from four to six stories high, it must have been dark. *But the darkness was obvious, and the danger was known ;* and hence caution and care were demanded of the intestate. How then did the accident happen ? How came he to fall over this stone coping into this known place of danger ? The evidence does not tell us. It is an unsolved mystery. No plausible theory can be suggested to account for it. * * * We have no right to *guess* that he was free from fault ; it was incumbent upon the plaintiff *to show it by a preponderance of evidence.* She furnished the jury with nothing from which they could infer the freedom of the intestate from fault. She simply furnished them food for speculation, and that will not do for the basis of a verdict. The law demands proof, and not mere surmises. The authorities are ample to show in such a case the plaintiff should have been nonsuited. Judgment (for plaintiff) reversed."

It is quite true that the court in *Hart* v. *Hudson River Bridge Co.* (80 N. Y. 622), says that : " When from the circumstances shown, inferences are to be drawn which are not certain and

incontrovertible, and may be differently made by different minds, it is for the jury to make them." But I fail to see the application of that rule to this case. Here the case is barren of all facts about which any rational opinion can be formed.

It is true, the field for conjecture is wide, but that conjecture is not fortified by any evidence except that the deceased was out in the dark, and was found at the foot of the precipice, injured and dying. As was said by the learned trial judge in pronouncing his opinion on the nonsuit: " I think there is an utter absence of proof that the deceased was free from negligence. The evidence is silent on the subject. There was no railing on this bridge, and the night was dark ; he was familiar with the place, presumably knew of its dangerous character; he is found at the foot of this abutment, underneath this place, suffering from injuries in consequence of which he died. Whether he himself was free from negligence, thoughtlessly walked over that place without taking any steps whatever to guard himself from doing it, what he was doing at that time, there is no evidence whatever. The law cannot presume freedom from negligence."

Like other facts, it must be proved either by direct evidence, or by circumstances which the jury may properly consider.

The judgment must be affirmed, with costs.

PUTNAM and HERRICK, JJ., concurred.

Judgment affirmed, with costs.