---

### FARREL et al. v. TOWN OF NORTH ELBA.

(Supreme Court, Appellate Division, Third Department. March 7, 1906.)

BRIDGES—INJURIES—CONTRIBUTORY NEGLIGENCE.

 In an action against a town for the death of plaintiff's intestate, it appeared that deceased was found in a river beneath a bridge, which stood on an embankment about nine feet high and which was much narrower that the highway, which narrowed as it approached the bridge. There were no rails on the approach to the bridge, nor on the abutments. Deceased lived near the bridge, was 25 years of age and a man of intelligence, and was well acquainted with the situation and conditions. There was an entire absence of proof as to how the accident occurred. *Held*, that he was guilty of contributory negligence.

Appeal from Trial Term, Essex County.

Action by Ellen Farrel and another, as administrators, against the town of North Elba. From a judgment for defendant, plaintiffs appeal. Affirmed.

Plaintiff's intestate was found dead in the west branch of Ausable river about 10 a. m.; his feet being near the shore, his stomach resting on a large stone in the water, his head and most of his body covered by the water, and his legs being partly out of the water. No bruises were found upon him, and it does not appear when he died. He lay nearly parallel to the Wear bridge, which stands on an embankment about nine feet high, and is much narrower than the highway, which narrows as it approaches the bridge. There are no rails on the approach to the bridge or on the abutments, although there are guard rails upon the bridge. The foot path turns into the road as it approaches the bridge, and if any one walked straight along, disregarding the turn in the path, he might well fall over the embankment. The decedent had worked on the Wear farm, lying on both sides of the bridge, for about six months, and the house in which he lived was but a few feet from the bridge, and he crossed the bridge frequently in driving cattle and in doing his work, and he well knew the situation. He was last seen alive, by the witnesses sworn, about 11 o'clock the previous night, at the house of his brother, about two miles from the bridge, and was starting to go to the Wear farm. He was 25 years of age, unmarried, a farm hand, and apparently of fair intelligence. It was a dark, rainy night. His habits are not shown, nor his condition on that night, except from his conversation in evidence we may judge that he talked intelligently. The plaintiffs claim the decedent must have fallen from the abutment or the approach of the bridge, being unable in the darkness to distinguish the walk. The defendant assumes that

he walked from the road in the dark into a little ravine, some distance from the bridge, and arrived at about the spot where his feet rested, and fell, and contends that there is no evidence, but only conjecture, as to how he came there and met his death.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Pyrke & Dudley (Berne A. Pyrke, of counsel), for appellants.
Smith & Wicks (Frederick A. Wicks, of counsel), for respondent.

JOHN M. KELLOGG, J.  There is an entire absence of proof as to how the deceased came in the water, or what care he took, or how negligent he was.  We are left entirely to conjecture as to the cause of his death, or his actions.  The court held there was no evidence tending to show that he exercised due care.  It is difficult to see how a man as familiar with the place as he was could fall or get into the river there with the exercise of due care.  He knew the situation and the danger.  He knew it was dark, the narrowing of the road, and the turn in the walk.  In Peaslee v. Town of Chatham, 69 Hun, 389, 23 N. Y. Supp. 628, a very similar case, the complaint was dismissed.  There the decedent was 78 years old, and more likely with due care to stumble and fall on a dark and rainy night than a young man.  It would seem that a young man accustomed to the place would not naturally go off or fall off the abutment or approach to this bridge if he were exercising due care.  In Irish v. Union Bag & Paper Company, 103 App. Div. 46, 92 N. Y. Supp. 695, there was no reason why the intestate should apprehend danger, and the injury might well have occurred from the improperly insulated wire, even though he were exercising all the care the known situation seemed to demand from the most careful person. He was a prudent and sober man, and the nature and extent of the danger was not apparent to him.  Here it cannot well be seen how the decedent came to his death without some fault or carelessness upon his part.

The judgment is affirmed, with costs.  All concur.