GERTRUDE HARPER, as Administratrix, etc., of JOHN F. HARPER, Deceased, Appellant, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Respondent.

*Negligence — an electric motorman, whose conductor has gone ahead at a railroad crossing and has beckoned to him to come on, injured by a train, the view of which was obstructed.*

In an action brought against a steam railroad corporation by the administratrix of a motorman who, while propelling his electric car across the defendant's tracks, which intersected at right angles the street on which the electric car was running, was struck and fatally injured by a train approaching at the rate of from twenty to twenty-five miles an hour, as the evidence tended to establish, without making any signals, proof that the electric car was stopped before it reached the crossing, and that the conductor went forward and looked up and down the tracks of the steam railroad, and that, neither seeing nor hearing any train, he signaled the motorman to proceed, which the latter did without apparently looking towards the direction from which the colliding train approached, the view in that direction being obscured by the glare and steam of an engine which was standing on a switch, having its headlight burning and blowing off steam, and by a line of box cars on a further side track, which, in consequence of a curve in the main track, obstructed the view beyond a distance of 575 feet, requires the submission to the jury of the question whether the motorman was guilty of contributory negligence.

APPEAL by the plaintiff, Gertrude Harper, as administratrix, etc., of John F. Harper, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Broome on the 1st day of March, 1897, upon a nonsuit granted by the court after a trial at the Broome Trial Term, and also from an order entered in said clerk's office on the 16th day of February, 1897, denying the plaintiff's motion for a new trial made upon the minutes.

*F. N. Gilbert* and *E. O'Connor*, for the appellant.

*D. S. Richards* and *John B. Stanchfield*, for the respondent.

MERWIN, J. :

This action is to recover damages for the death of John F. Harper, plaintiff's intestate, caused, as the plaintiff claims, by the negligence of the defendant. At the trial, at the close of the evidence

on the part of the plaintiff, a nonsuit was granted, the main ground, as then stated, being that the evidence was not sufficient to carry to the jury the question of contributory negligence. The ground was also taken that no negligence on the part of defendant had been shown.

Harper was a motorman in the employ of the Binghamton Street Railroad Company, whose tracks run nearly east and west along the center of Robinson street in the city of Binghamton. Three tracks of the defendant's railroad cross that street nearly at right angles, the easterly one being the north-bound track, the middle one being the south-bound track, and the other, or westerly one, being a side track. They occupy a width of about thirty feet as they cross the street. On the evening of December 1, 1895, about nine o'clock, a street car, upon which Harper was the motorman and was stationed at his post in the front end of the car, came along Robinson street from the east, passed through a switch, which was fifty to seventy-five feet east from the easterly track of defendant, and then came to a standstill twenty-five or thirty feet east of defendant's east track. The conductor of the street car, one Caniff, then got off the car and went ahead, stopped in the middle of the middle track, looked both ways, up and down the track, saw no train coming and heard none, and then signaled the motorman to come along. He did so at a moderate rate, and just as he reached the middle track his car was struck by a train of defendant coming from the north on the south-bound track. From injuries then received Harper afterwards died.

The speed of defendant's train was from twenty to twenty-five miles an hour on a slightly descending grade. There was evidence tending to show that no signal was given of its approach. The view from the crossing to the north was somewhat obstructed. About 100 feet north of the crossing, and on the switch east of the main tracks, there was standing a switch engine, with head-light burning and shining towards the crossing, and blowing off steam. There is evidence that a man standing at any point between forty and twenty feet east of the crossing could not, by reason of this switch engine, see the track northerly up the yard beyond the engine, and that, also, the glare of the headlight and the steam interfered with the view beyond that point to one standing at the center of the tracks on the street. There was also, on the the third or side

track, a line of box cars that, by reason of a curve westwardly in the main tracks, obstructed the view on them beyond the distance of 575 feet. There is evidence that Harper, as he left the switch on his track, looked to the north, and it may be inferred that, had he looked to the north when, after stopping, he started to cross over, he could not have seen the approaching train. The conductor, after signaling Harper to come on, remained where he was, not seeing the approaching train until too late to prevent the approach of the street car. It was not shown that Harper, after he started, looked to the north.

The decedent having stopped, and not being able at that point to hear or see any approaching train, and the conductor having gone ahead and being unable from the center of the crossing to hear or see any, and so informing the decedent, it should not be said, as matter of law, that the decedent was negligent in starting to go over. Having started, whether he should again stop or make further efforts himself to look in either direction, was a question for the jury. The obstructions to the view were such, especially the glare of the headlight on the switching engine, that it was uncertain whether the approaching train could have been seen beyond the stationary light, and the distance between the crossing and that light may have been passed over in so brief a time that a collision could not be avoided. Besides, if no signal was given of its approach, its headlight may not have been distinguishable from the headlight of the switching engine standing still and blowing off steam.

"If in case of an accident at a crossing it appears that the person injured did look for an approaching train, it would not necessarily follow, as a rule of law, that he was remediless because he did not look at the precise place and time when and where looking would have been of the most advantage." (*Rodrian* v. *N. Y., N. H. & H. R. R. Co.*, 125 N. Y. 526; *McPeak* v. *N. Y. C. & H. R. R. R. Co.*, 85 Hun, 107; *Greany* v. *Long Island R. R. Co.*, 101 N. Y. 419, 427; *Pitts* v. *N. Y., L. E. & W. R. R. Co.*, 79 Hun, 546; affd., 152 N. Y. 623.) The absence of signals and the presence of obstructions are circumstances to be considered.

Whether or not the decedent had, in the exercise of reasonable care, a right to rely upon the information received by him from the conductor as to the absence of danger was, I think, under the cir-

cumstances here presented, a question of fact. There was no particular arrangement on the subject between them. Apparently, as employees of the same corporation, they were each in the discharge of their respective duties. If the conductor was negligent, it does not necessarily follow that the defendant was relieved from liability for its negligence. (*Perry* v. *Lansing*, 17 Hun, 34; *Schmidt* v. *Steinway & H. P. R. R. Co.*, 55 id. 496; *Galvin* v. *Mayor, etc.*, 112 N. Y. 223.) As a rule a stranger cannot take advantage of the negligence of a co-employee of the person injured.

The absence of contributory negligence may be shown by circumstantial as well as direct evidence, and if different conclusions may be drawn from the circumstances proved, a question is presented for the jury to determine. (*Chisholm* v. *State*, 141 N. Y. 246.) So it has been said that if there is any inference of fact in doubt, or any evidence, direct or inferential, of care or caution on the part of the person injured, the question is for the jury. (*Campbell* v. *N. Y. C. & H. R. R. R. Co.*, 3 N. Y. Supp. 694; affd., 121 N. Y. 669. See, also, *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 id. 355, 364; *Beckwith* v. *N. Y. C. & H. R. R. R. Co.*, 54 Hun, 446; affd., 125 N. Y. 759; *Sauerborn* v. *N. Y. C. & H. R. R. R. Co.*, 69 Hun, 429; affd., 141 N. Y. 553.)

In the present case the question of contributory negligence should, I think, have been submitted to the jury. As no point is here made by the defendant that the evidence was not sufficient to carry the case to the jury on the question of defendant's negligence, that subject need not be considered.

All concurred.

Judgment and order reversed and a new trial granted, costs to abide the event.