Under the circumstances of these cases, all questions of fact and law were thus submitted to the determination of the trial court. Adams v. Lumber Co., 159 N. Y. 176, 180, 53 N. E. 805. And we have only to examine the cases, to determine whether the conclusions reached are supported by the evidence. In the case of Pod- more v. Institution, 48 App. Div. 218, 62 N. Y. Supp. 961, where the evidence was almost identical with that produced in the cases at bar, the court held that, while there was sufficient evidence to establish a gift causa mortis, the defendant's main witnesses had been unable to identify "the particular pass book in question as one of those which were delivered by the deceased to Mrs. Reilley." The court continues:

"Mrs. Reilley, however, supplied the proof of identification. She was called by the plaintiff for another purpose, and upon her cross-examination she testified that the book in question was given to her by Ann Caldwell. The only objection made to this testimony was that it was not cross-examination. The defendant's counsel then stated that he would make Mrs. Reilley his own witness for that purpose, and there was no further objection to the question. But, while this testimony thus became a proper subject for the consideration of the jury, it was not conclusive. As the defendant practically stood in Mrs. Reilley's shoes, she was to all intents and purposes an interested witness, and her testimony should have been treated as though she were herself the contesting party. The learned trial justice should certainly have submitted the question of her credibility to the jury."

In the cases at bar Mrs. Reilley likewise furnished the proof, if there was any proof, of the identity of the pass book; and the learned trial court, clothed with the powers of the jury by the motions for the direction of a verdict, has found in favor of the plaintiff. The court had the witness in view, having the same opportunity for judging of her credibility that the jury would have had, and the finding of the court is in all respects as conclusive as though the question had been passed upon by the jury.

The remaining questions were fully treated in the case of Pod- more v. Institution, supra, and it does not seem necessary to further discuss either case. The judgments appealed from should be affirmed.

Judgments affirmed, with costs. All concur, except BARTLETT, J., absent.

---

WOODWORTH v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. November 23, 1900.)

1. RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Plaintiff's husband was killed, while crossing the tracks of defendant company, by a south-bound express train, which approached at 25 miles an hour without signal. At the point of the accident there were five tracks,—two north-bound switches and a south-bound switch, between which were two main tracks,—and freight trains were standing on the south-bound and on one of the north-bound switches, and the engine on the former was moving, and making the noise usual to a moving engine. The night was dark and cold, and the walk was very slippery from ice formed by spray thrown out by the engines in taking water without stop-

ping. Just north of the crossing the track makes a sharp curve, and the sidewalk bears to the north as it crosses the tracks, and there were no flagman, gates, or lights at the crossing, and no eyewitness to the accident. Defendant was a temperate man, 45 years old, and had good eyes and hearing. *Held*, that the facts did not show that deceased was guilty of contributory negligence as a matter of law, since they fairly indicated that the accident might have occurred without any blame on his part, and hence the question of his contributory negligence was properly submitted to the jury.

2. SAME—EXCESSIVE DAMAGES.

Where deceased, a man 45 years of age, without children, and who had no steady employment, but supported his wife by doing odd jobs, was killed by the negligence of defendant railway company, a verdict of $10,-000 was not excessive.

Goodrich, P. J., and Jenks, J., dissenting.

Appeal from trial term, Westchester county.

Action by Hattie Woodworth, as administratrix of George H. Woodworth, deceased, against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff for $10,000, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Charles C. Paulding, for appellant.
Clinton R. Ferris, for respondent.

HIRSCHBERG, J. The plaintiff's husband was killed upon a public highway, while crossing the defendant's tracks at Montrose station, on the night of December 24, 1896, by an express train from the south, which came upon him around an abrupt curve just below the highway, and without a signal from bell or whistle, or any other warning. The fact of the defendant's negligence was scarcely in dispute. The defendant offered no evidence. All the witnesses whose attention was directed to the subject testified that the whistle was not blown or the bell rung; and the engineer in charge of the engine at the time, although called as a witness by the plaintiff to prove the collision, was not required by the defendant to refute the fact that no warning signal was given of the approach of his train. There were no gates at the crossing, no flagman, and no lights. The defendant, however, relies upon the fact that, as there was no eyewitness of the occurrence, there can be no recovery, on the theory that the deceased, by looking in the direction from which it came, might have seen the train in time to avoid the accident, and therefore was chargeable with contributory negligence as matter of law. The facts of the case, however, bring it within an unbroken line of authorities in this state to the effect that the question of the negligence of the deceased was, under the circumstances, one of fact, and was, therefore, properly submitted to the jury by the learned trial court. No exception was taken to the charge. The deceased lived at Montrose, west of the railroad, and at the time of his death was on his way from the station, which is just west of the tracks, to a stable a short distance east of the railroad. The night was dark,

66 N.Y.S.—68

and very cold, and the planking which constituted the highway where it crossed the tracks was icy and slippery, because of spray thrown thereon by defendant's engines in taking water without stopping at adjacent water troughs sunk between the rails. There was some snow on the ground, and one witness thought it was snowing at the time, but was not sure. The highway at the crossing bears to the north, or away from the direction from which the train approached. There were five tracks to cross,—a south-bound switch, the south-bound main, the north-bound main, and two north-bound switches. On the south-bound switch and on one of the north-bound switches there were freight trains standing, but broken so as to leave the crossing clear. One witness testified that there were trains on the three switch tracks, which, if true, would necessarily occupy both north-bound switches, and to that extent increase the obstructions to the view of a train coming around the curve spoken of. A few minutes before the accident a witness noticed that the engine of the freight train on the south-bound switch was moving around just below or south of the crossing, making some noise, occasioned by the revolving of the wheels and steam escaping; he said, as "is usual from an engine." The precise location of the curve south of the crossing does not appear, its distance from the crossing being stated but indefinitely. It does appear that the curve was a sharp one, and bore towards the east. There was also evidence from which the jury was entitled to conclude that the curve was so close to the crossing that a train traveling 25 miles an hour—which was the speed of the one in question—would reach the crossing in a very few seconds after turning the curve. The only estimate of the distance from the crossing to the commencement of the curve was given by the defendant's station agent at Montrose, who testified on cross-examination that he should judge the curve commenced five or six hundred feet below the crossing. It is not entirely clear whether he was referring to the northern or the southern end of the curve, in view of the fact that on his direct examination he had testified that it was "an abrupt curve a few yards south" of the crossing. It is not customary to refer to hundreds of feet as a few yards, and the jury may very well have regarded his original statement as the more accurate, especially in view of the fact of his employment by the defendant, and the fact that no evidence was offered by the defendant of the exact measurement, or any other specific proof of how far a train from the south would be visible to a person on the crossing. Another witness testified that from a "little raise" of ground, on which he was standing, he could see the track below the station, and also below a pickle house south of it, and could also see the light in a railroad tower about 4,000 feet below. But he was located at a considerable distance to the west of the station, and where he could command a view of the curve spoken of, assuming it to be but a "few yards" below the crossing. No accurate measurement was given of the distance below the crossing at which a train would be visible, and no witness testified how far a train could be seen from any portion of the railroad property or tracks. It did appear, however, that the deceased traveled less than 60 feet in going from the

station to the place where he was struck, during the greater part of which space the track to the south was obstructed, or he was where care would require him to look in the opposite direction; and a witness who had crossed just ahead of him, and in the same direction (David Anderson), but who did not see the deceased, testified that he had gotten only about three rods east of the train at the time it passed the crossing, although, when he was passing over the northbound track, he did not see it. He heard the train approaching after he got across the tracks, but did not actually see it until it reached the crossing. The deceased must have been struck when clear, or nearly clear, of the rails of the north-bound track, for he was found lying diagonally, close to, and east of that track, between it and the first north-bound switch, near a mail crane which was a foot and a half or two feet north of the crossing. His hat and one boot were missing from the body, and the injuries consisted of a large scalp wound, laceration of the external ear, fracture of the left temporal bone, and fracture of the legs just above the knee. His hat was found on the engine when the train reached Poughkeepsie, and the glass in one of the engine's markers was found to be broken. The train was 10 minutes late, passing Montrose at about 6:17 o'clock, and the deceased was last seen at the depot, whence he endeavored to cross the tracks at about 6:15. He had been in the employ of the defendant, but was not at the time of the accident; was an educated, temperate man, 45 years old, of good physical capacity, with good eyesight and hearing, and careful and cautious in disposition and temperament.

From the evidence, including a map of the locality drawn to a scale, I think the deceased must have had about 30 feet of icy planking to walk from the point where he first emerged from the broken freight train on the south-bound switch to the place where he was struck. Assuming that he could walk that distance on the ice in about the same time that Anderson walked 3 rods, or about 50 feet, beyond the planking, where the footing was secure, it would seem to be clearly established that at the time the deceased first arrived at a point where he could look to the south the train in question was not in sight. Seeing no danger in that direction, he would naturally, as a prudent man, look towards the north while crossing the south-bound main; and if, before stepping on the north-bound main, he took the extra precaution of looking again to the south, it is by no means clear from the evidence that the train was yet in sight, or, if it was, that his view of it was sufficiently timely to enable him to avoid the accident. The darkness of the night, the noise and motion of the freight engine, the slippery condition of the planking, which necessitated some degree of attention on the part of a pedestrian, the position of the freight trains, the speed of the oncoming train, with the nearness of the curve, the necessity of instant decision as to the best course for safety, the fact that safety was almost attained at the very moment of the collision, and, above all, the absence of the customary signals of an approaching train upon which to some extent a traveler on a dark night upon a public highway would naturally rely, are all important factors in the inquiry,

and directly tend to make the question of care under the circumstances one of fact, and not of law. They appeal to different minds with a varying degree of force and cogency, and, however we might feel disposed to vote upon the question as jurymen were the controversy presented to us in that capacity, it is clearly alien to the province of the court to determine the contention.

"The question of contributory negligence," said Judge Allen in Massoth v. Canal Co., 64 N. Y. 524, 529, "in cases of this character, is ordinarily one of fact for the jury. It depends usually upon a variety of circumstances, and upon inferences from the facts proved, calling for the exercise of practical knowledge and experience, and is peculiarly within the province of a jury of twelve men. It is only where it clearly appears from all the circumstances, or is proved by uncontroverted evidence, that the party injured has, by his own acts or neglect, contributed to the injury, that the court can take the case from the jury, and nonsuit the plaintiff. Lane v. Atlantic Works, 111 Mass. 136; Weber v. Railroad Co., 58 N. Y. 451; Davis v. Same, 47 N. Y. 400; Hackford v. Same, 53 N. Y. 654. The instances in which nonsuits have been sustained by reason of the contributory negligence of the plaintiff or the party sustaining injury have been exceptional cases in which the court has adjudged that such negligence was conclusively established by evidence which left nothing, either of inference or of fact, in doubt, or to be settled by a jury. Reynolds v. Railroad Co., 58 N. Y. 248; Gorton v. Railroad Co., 45 N. Y. 660."

### In Hart v. Bridge Co., 80 N. Y. 622, the court said:

"It was incumbent upon the plaintiff to show affirmatively that the negligence of the defendant was the sole cause of the death of the deceased. But it needs not that this be done by the positive and direct evidence of the negligence of the defendant, and of the freedom from negligence of the deceased. The proofs may be indirect, and the evidence had by showing circumstances from which the inference is fairly to be drawn that these principal and essential facts existed. When, from the circumstances shown, inferences are to be drawn which are not certain and incontrovertible, and may be differently made by different minds, it is for the jury to make them; that is to say, when the process is to be had at a trial of ascertaining whether one fact had being from the existence of another fact, it is for the jury to go through with that process. Justice v. Lang, 52 N. Y. 323."

### In Stackus v. Railroad Co., 79 N. Y. 464, it was held, quoting the headnote, that:

"To justify a nonsuit on the ground of contributory negligence, the undisputed facts must show the omission or commission of some act which the law adjudges negligence. The negligence must appear so clearly that no construction of the evidence or inference drawn from the facts will warrant a contrary conclusion." Chief Judge Church said (page 469): "There are no two cases alike in circumstances, and therefore mere precedents are of little value; but the authorities. I think, clearly recognize and establish the distinction here indicated between questions of fact and law. Massoth v. Canal Co., 64 N. Y. 524–529; Ireland v. Plank-Road Co., 13 N. Y. 533; Renwick v. Railroad Co., 36 N. Y. 132; Dolan v. Canal Co., 71 N. Y. 285, 286, 289; Hill v. Railroad Co., 64 N. Y. 652; Davis v. Railroad Co., 47 N. Y. 400."

### In Tolman v. Railroad Co., 98 N. Y. 198, Judge Finch said (page 203):

"The burden of establishing affirmatively freedom from contributory negligence may be successfully borne, though there were no eyewitnesses of the accident, and even although its precise cause and manner of occurrence are unknown. If, in such case, the surrounding facts and circumstances reasonably indicate or tend to establish that the accident might have occurred without negligence of the deceased, that inference becomes possible, in addition to that which involves a careless or willful disregard of personal safety, and so a

question of fact may arise to be solved by a jury, and require a choice between possible, but divergent, inferences."

To the like effect are the following decisions, abundantly establishing the proposition that the facts in this case required the submission of the controversy to the jury: Jones v. Railroad Co., 28 Hun, 364, affirmed in 92 N. Y. 628; Petrie v. Railroad Co., 66 Hun, 282, 284, 21 N. Y. Supp. 159; Pitts v. Railroad Co., 79 Hun, 546, 29 N. Y. Supp. 871, affirmed in 152 N. Y. 623, 46 N. E. 1150; McPeak v. Railroad Co., 85 Hun, 107, 32 N. Y. Supp. 647; Fejdowski v. President, etc., 12 App. Div. 589, 43 N. Y. Supp. 84; Noble v. Railroad Co., 20 App. Div. 40, 46 N. Y. Supp. 645, affirmed in 161 N. Y. 620, 55 N. E. 1098; Harper v. Railroad Co., 22 App. Div. 273, 47 N. Y. Supp. 933; Wieland v. President, etc., 30 App. Div. 85, 51 N. Y. Supp. 776; Pruey v. Railroad Co., 41 App. Div. 158, 58 N. Y. Supp. 797; Kellogg v. Railroad Co., 79 N. Y. 72; Glushing v. Sharp, 96 N. Y. 676; Greany v. Railroad Co., 101 N. Y. 419, 427, 5 N. E. 425; Galvin v. Mayor, etc., 112 N. Y. 223, 19 N. E. 675; Rodrian v. Railroad Co., 125 N. Y. 526, 26 N. E. 741; Chisholm v. State, 141 N. Y. 246, 36 N. E. 184; Schafer v. Mayor, etc., 154 N. Y. 466, 48 N. E. 749; and Judson v. Railroad Co., 158 N. Y. 597, 604, 53 N. E. 514.

The general rule approved and reaffirmed by this court in the Noble Case, supra, is well stated in the headnote in Pitts v. Railroad Co., supra, that:

"The fact that no one can testify that he saw the deceased look both ways and listen before attempting to cross the railroad tracks on which he was killed does not necessarily show that she did not do her duty in that regard, and, if the facts and surrounding circumstances shown are such as to reasonably indicate or tend to establish that the accident might have occurred without negligence on the part of the deceased, the question of contributory negligence is to be determined by the jury, although there were no eyewitnesses to the accident. It cannot be said, as a matter of law, at what particular point, before reaching the railroad tracks, the deceased should have looked for an approaching train."

Of course, if the facts and circumstances point as much to the negligence of the deceased as to its absence, or point in neither direction, the question becomes one of law, and there must be a nonsuit. Wiwirowski v. Railway Co., 124 N. Y. 420, 425, 26 N. E. 1023.

In the Harper Case, supra, the court said (page 275, 22 App. Div., and page 935, 47 N. Y. Supp.):

" 'If, in case of an accident at a crossing, it appears that the person injured did look for an approaching train, it would not necessarily follow, as a rule of law, that he was remediless because he did not look at the precise place and time when and where looking would have been of most advantage.' Rodrian v. Railroad Co., 125 N. Y. 526, 26 N. E. 741; McPeak v. Railroad Co., 85 Hun, 107, 32 N. Y. Supp. 647; Greany v. Railroad Co., 101 N. Y. 419, 427, 5 N. E. 425; Pitts v. Railroad Co., 79 Hun, 546, 29 N. Y. Supp. 871, affirmed in 152 N. Y. 623, 46 N. E. 1150. The absence of signals and the presence of obstructions are circumstances to be considered."

The cases cited by the appellant do not conflict in any way with the views herein expressed. Each rests on its own facts. Certainly none of them sustains the proposition that, as matter of law, a cautious man walking across a railroad track upon icy planking, in the nighttime, could not, by any possibility, be killed by an express train

masked from view both by freight cars and an abrupt curve, and rushing upon him at a high rate of speed, unawares, and without warning, unless his own negligence contributed to the result.

In Hennessy v. Railroad Co., 17 App. Div. 162, 45 N. Y. Supp. 147, the conditions were such that the deceased "could have seen the bright headlight of the locomotive of the coming train, if she had looked, anywhere within four hundred feet away."

In Jencks v. Railroad Co., 33 App. Div. 633, 53 N. Y. Supp. 625, the evidence indicated, according to the per curiam opinion, that the plaintiff's intestate, had he looked, could have seen the approaching train when a crossing signal was given 600 feet from the place of the accident.

In Wilcox v. Railroad Co., 39 N. Y. 358, the deceased was killed while walking upon or close to the railroad track in the same direction as the approaching train, in the daytime, with no obstructions, and nothing to divert his attention, at a place where he could have seen the engine while at a distance of about 1,000 feet. The evidence indicated that he never looked behind him to see if a train was approaching, or took any other precaution to insure his safety.

In Reynolds v. Railroad Co., 58 N. Y. 248, the plaintiff's intestate was killed in the daytime at a point where the track was straight for about half a mile each way, and the engine was visible 750 feet distant at a point 10 feet from the track, and half a mile away at a point 3 feet from the track.

In Cordell v. Railroad Co., 75 N. Y. 330, the evidence affirmatively established contributory negligence. The deceased was killed in the daytime, on a farm crossing, as he was stepping on the track in front of an engine which he could have seen 150 feet away. The engine signaled him, but he was looking in the opposite direction, and one from which no danger was to be apprehended.

In Hoag v. Railroad Co., 111 N. Y. 199, 18 N. E. 648, a nonsuit was reversed on the ground that the driver's negligence was not imputable to the plaintiff's intestate. The railroad track at the crossing was visible for a distance of one or two miles.

In Bond v. Smith, 113 N. Y. 378, 21 N. E. 128, the plaintiff's intestate was killed by falling into an area in some unexplained manner. The court said (page 385, 113 N. Y., and page 130, 21 N. E.):

"How, then, did the accident happen? How came he to fall over this stone coping into this known place of danger? The evidence does not tell us. It is an unsolved mystery. No plausible theory can be suggested to account for it. It is, however, plain that he could not have fallen into it while passing along the street. He must have departed from the street, and thus have gone over the stone coping. It is impossible to conceive how he could, when in the exercise of ordinary care and prudence, have fallen into it. We have no right to guess that he was free from fault. It was incumbent upon the plaintiff to show it by a preponderance of evidence. She furnished the jury with nothing from which they could infer the freedom of the intestate from fault."

In Wiwirowski v. Railway Co., 124 N. Y. 420, 26 N. E. 1023, it was undisputed that, after passing the first of the Central tracks, there was nothing to obstruct the vision, other than the darkness that prevailed, for a long distance, and there was nothing to obstruct the sound. At the place of the accident the tracks of the defendant

were straight for a distance of 1,850 feet east and 3,200 feet west. The train which struck the plaintiff's intestate was running at a speed of between four and five miles per hour; but little, if any, faster than a rapid walk. As was said of this case by the court in Fejdowski v. President, etc., supra (page 592, 12 App. Div., and page 86, 43 N. Y. Supp.):

"The deceased walked onto the track ahead of the engine, and, considering the speed at which it was going, it must have been very close to him when he did so; so close that it is hardly credible that he could have looked without seeing it."

In Ruppert v. Railroad Co., 154 N. Y. 90, 47 N. E. 971, nothing was decided which bears even remotely on the case at bar. As was said by Judge O'Brien (page 92, 154 N. Y., and page 972, 47 N. E.):

"The only question presented by this appeal is whether there was any evidence to warrant a finding of negligence against the defendant."

The decision was to the effect that, to entitle the plaintiff to recover in an action for a personal injury, the evidence must show that the injury was the result of some cause for which the defendant is responsible. If, upon the testimony, it is as probable that the injury resulted from the act of another as from that of the defendant, the plaintiff cannot recover.

I have thus examined all the cases cited by the appellant, and find none which authorizes or warrants a reversal. Those to the contrary might be indefinitely extended; for, as Mr. Justice Bartlett said, in Noble v. Railroad Co., supra, a case similar to this one in many of its features, "it is easy to find instances in the reports where recoveries have been sustained upon less cogent proof than is here presented, as tending to establish the absence of contributory negligence." The plaintiff in negligence cases must affirmatively establish his own freedom from fault. Where the accident has resulted in death, this burden must be borne by the personal representatives. If no one saw the occurrence, the necessary proof may still be made by circumstances. If such circumstances indicate fault on the part of the deceased, or are as consistent with fault as with its absence, or if they bear neither way upon the question, there must be a nonsuit. But, if they fairly indicate that the accident may have occurred without any legal blame upon the part of the deceased, then the question whether or not they affirmatively establish freedom from contributory negligence is to be resolved by the jury as one of fact. The exceptions presented are not found to be well taken, and the verdict was not excessive. The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur, except GOODRICH, P. J., and JENKS, J., dissenting.

GOODRICH, P. J. I dissent from the prevailing opinion. Woodworth, the deceased, who had been a railroad man in the employ of the defendant, lived on the west side of the defendant's tracks near the station at Montrose, where there is a plank crossing over the tracks, which run about north and south. The crossing is nearly at

right angles with the tracks, bearing a little to the north. At the crossing there are five tracks. Commencing on the west is what is known as the south-bound switch, next the south-bound main track, next the north-bound main track, and next are the two north-bound switches. To the north of the crossing, and between the rails of the main track, are iron troughs for the purpose of enabling moving trains to take up water. In the south-bound track the end of the trough nearest the crossing is about 60 feet therefrom, and on the day in question trains going south had thrown water and spray upon the crossing, the result being that ice was formed thereon. There was also some snow upon the ground. Shortly before the accident, Woodworth stopped at the station west of the crossing, and left to transact some business at a stable on the east side of the tracks. At 17 minutes after 6 a north-bound express train, some 10 minutes late, and running at the rate of 25 miles an hour, passed the station without sounding the bell or whistle, but the widow of the deceased and others in the vicinity heard the noise or rumbling of the train as it approached the crossing. Mr. Lent, a witness called by the plaintiff, testified on his direct examination that there was an abrupt curve south of the crossing "a few yards south of this crossing," and on his cross-examination he said, pointing to the diagram in evidence, "The crossing is here, and the curve commences some place down here [indicating on the map], five or six hundred feet, I should judge." This map, which is annexed to the record, shows the location of the crossing and a portion of the track extending southerly for a distance of 300 feet. Beyond this is a blank space. On the map is a statement that it is drawn on a scale of 40 feet to the inch, though the witness, through an evident mistake, spoke of it as being drawn on a scale of 20 feet to the inch. There was no abrupt curve shown by the map on any portion of this 300 feet of track, although there is a curve so slight as to be hardly manifest on the map. When the witness said, "The curve commences some place down here," he could not have meant at any portion of the 300 feet of track laid down on the map, as there was no abrupt curve; and I assume that he must have pointed to the blank space below the track laid down on the map. I think, therefore, that when he said the curve "commences" he was speaking of the commencement nearest the crossing, and not to the commencement at the lower end, which was furthest away from him. So, if this witness, who was called for the plaintiff, is to be credited, there was a straight track of more than 300 feet below the crossing, upon any part of which the train must have been visible to the deceased. Wyant, who was standing at a store kept by Wilkins, which is 25 feet from the crossing on the westerly side of the track, testified that he could see the track south of the station. There was an old pickle house, some 200 feet long, south of the station; and when the leaves were off the trees he could see the light in a railroad tower, about 4,000 feet distant. He said:

"You cannot look right straight down, and see the track itself, south of the station, on account of the old pickle house. You can see a train coming along. You can see a train further south than the pickle house, and also just south

of the station.   The space between the station house and the pickle house is. 30 or 40 feet."

There is no evidence as to any act of Woodworth after leaving the station.   He was found dead at 40 minutes after 7, between the north-bound and south-bound main tracks, his head near a mail crane, which was a few feet north of the crossing, his feet being about a foot north of the crossing.   There was a gash in the head, and one boot was missing.   His hat was found upon the engine when the train arrived at Poughkeepsie.   It is clear that he was struck and killed by the engine of that train.   The evidence is sufficient to prove negligence on the part of the defendant in failing to sound a whistle or ring a bell while the train was approaching the crossing.   Our difficulty arises upon the question of the contributory negligence of the deceased; a point upon which the learned trial justice had equal difficulty.   He said:

"Nobody saw him at the time he crossed the track.   Nobody saw him go to the track; nobody saw him on the track; nobody saw the train strike him; and no human eye, so far as you know, and therefore no human being, can tell you just what happened at the time this unfortunate occurrence took place. Then you say at once: 'How are we to know?   How are we to become satisfied that he exercised ordinary care?'   Well, I have decided, after some hesitation, to leave it to you to say, under all the proof in the case, whether he did or did not exercise ordinary care.   You must, however, be able to find it from the evidence in the case."

In Pruey v. Railroad Co., 41 App. Div. 158, 58 N. Y. Supp. 797, Mr. Justice Spring, writing for the court, stated the rule applicable to cases of this character as follows (page 160, 41 App. Div., and page 799, 58 N. Y. Supp.):

"In a case where death ensues as a result of a collision of this kind, and where there is no eyewitness of the occurrence, there is a relaxation of the rule requiring strict proof that the decedent was vigilant and observant as he advanced towards the track.   The regulation exists in its integrity, but the proofs presented may be inferential, may be dependent upon circumstances, and still be adequate to satisfy the court of the absence of contributory negligence.   As was said in Noble v. Railroad Co., 20 App. Div. 42, 46 N. Y. Supp. 645: 'In actions to recover damages for negligence resulting in death, where there are no eyewitnesses of the accident, the freedom of the deceased from contributory negligence may be established by proof of facts and circumstances from which it may fairly be inferred that the deceased was not at fault.' Wieland v. President, etc., 30 App. Div. 85, 51 N. Y. Supp. 776; Chisholm v. State, 141 N. Y. 246, 36 N. E. 184."

In the Noble Case, supra, affirmed without opinion in 161 N. Y. 620, 55 N. E. 1098, we affirmed a judgment in the case of a person killed at a railroad crossing at Ashburton avenue, Yonkers, during a very dense fog, by the south-bound Chicago Limited express train running between 37 and 40 miles an hour; there being a freight train on either side of the track, and a north-bound freight train having just passed.   Mr. Justice Willard Bartlett, writing the opinion, said (page 42, 20 App. Div., and page 647, 46 N. Y. Supp.):

"The night of the accident was dark, and very foggy.   'As we passed through Ashburton avenue,' says the engineer of the Chicago Limited, 'you could not see the track at all ahead of you, hardly, on account of the fog and darkness.'   On a switch or side track north of the crossing stood a freight car or freight cars in such a position with reference to the approaching train as-

to interfere with the view until a person was very close to the track. A northward-bound freight train had just passed the crossing on one of the tracks to the east, or must have been passing over it as Noble arrived there. His duty was to look and listen. But to look was of no avail if the car or cars on the siding obstructed his vision, as may well have been the case in the fog, without his perceiving that there was any such obstacle there, or what the nature of the obstacle was. And, while there is evidence that the engine bell on the Chicago Limited was rung as it neared Ashburton avenue, the noise of the north-bound freight train could readily render its sound imperceptible to a listener situated as was the plaintiff's husband when he endeavored to cross the track."

The case at bar differs from the Noble Case. There was no fog. One of the witnesses said: "I think it was clear. It might have been snowing a little bit. I do not know that it was snowing, because I am not sure of it. I know that there was snow on the ground." The deceased, in passing through the opening between the cars on the south-bound switch, had a distance to cover of 25 feet to the first rail of the north-bound track; and while crossing this space he could have had an unobstructed view for several hundred feet. Though the engine was not sounding a bell or whistle, its headlight was visible to him, if he looked, for a distance of several hundred feet, with nothing to obscure his vision; and I see no escape from the conclusion that Woodworth either did not look for the train, or, seeing it, took the risk of crossing, and was, therefore, guilty of contributory negligence in attempting to cross ahead of it. It is possible that he did look, and, seeing the train several hundred feet away, concluded that he had time to cross the track in safety, but fell upon the ice and snow which covered the crossing, and, being unable to recover his footing, could not escape the approaching train; but this is merely speculative.

In Wilcox v. Railroad Co., 39 N. Y. 358, the court by a unanimous vote reversed a judgment for the plaintiff, and held that a nonsuit should have been granted. The case is very similar to the one at bar. The plaintiff's intestate was killed by a train of the defendant while he was passing on foot a crossing of the defendant's road. At the time of the accident the deceased had gone to a limekiln near by for a pail of mortar. He left there to go home, and the last seen of him before the engine struck him was when he was crossing a cattle guard at the crossing. The court said (page 360):

"At the time when the occurrence took place he was on the public highway, where he had a perfect right to be, for the purpose of traveling, or of crossing the track. He was familiar with the locality, having lived for some time in the neighborhood; and probably was acquainted with the times for the running of the trains. It was not the time for any regular train to pass, but engines and trains were passing at all hours of the day and night. * * * The evidence does not show whether the deceased, before attempting to cross, looked up and down the track to ascertain whether a train was coming; but it appears the engine or train was in plain sight, as he could see for a distance of seventy or eighty rods. It is a fair and reasonable presumption, arising from all the circumstances attending the transaction, that he did not look; for, had he done so, he must have seen the engine approaching, and he could have escaped, and his life would have been saved. I think, therefore, that we must assume that he did not look, and, in failing to do so, he neglected a plain and imperative duty, and was guilty of negligence, which precludes a recovery."

It was also held that the negligence of the company in not ringing a bell or sounding the whistle did not excuse the other party from the exercise of ordinary care and prudence in attempting to cross the track of the road.

In Hennessy v. Railroad Co., 17 App. Div. 162, 45 N. Y. Supp. 147, a woman, when last seen alive, was at a street crossing at night, about to pass over a railroad siding towards the main track, near which her dead body was subsequently found, and where she presumably was struck by a train passing at that time, the headlight of which must have been visible to her for a distance of at least 100 feet. The court held that these circumstances did not warrant the inference that the deceased looked or listened when she passed over the siding and upon the main track, that no inference could be drawn that she did look or listen, and that her freedom from contributory negligence was not shown. The judgment for the plaintiff was reversed.

In Wiwirowski v. Railway Co., 124 N. Y. 420, 26 N. E. 1023, the deceased and his wife were crossing railroad tracks in the city of Buffalo, and the former, being in advance, was struck and killed by the tender of a locomotive which was being backed. He had crossed three tracks before reaching the one where the accident occurred. No evidence was given tending to show that the deceased looked or listened before reaching the tracks, but his wife testified that she looked and listened, but saw no light or car approaching. The court held that the evidence failed to show want of contributory negligence, and that a refusal to nonsuit the plaintiff was error; saying (page 425, 124 N. Y., and page 1024, 26 N. E.):

"The burden of showing that the plaintiff's intestate was free from contributory negligence rested upon the plaintiff. It is true that the want of negligence may be established from inferences which may be properly drawn from the surrounding facts and circumstances, as in the case of Galvin v. Mayor, etc., 112 N. Y. 223, 19 N. E. 675. But such inference cannot be drawn from a presumption that a person will exercise care and prudence in regard to his own life and safety, for the reason that human experience is to the effect that persons exposed to danger will frequently forego the ordinary precautions of safety. And when the circumstances point as much to the negligence of the deceased as to its absence, or point in neither direction, a nonsuit should be granted. Cordell v. Railroad Co., 75 N. Y. 330. See, also, Reynolds v. Railroad Co., 58 N. Y. 248; Hoag v. Railroad Co., 111 N. Y. 199, 18 N. E. 648; Bond v. Smith, 113 N. Y. 378, 21 N. E. 128."

It was held in Ruppert v. Railroad Co., 154 N. Y. 90, 94, 47 N. E. 971, as follows:

"In order to prove a fact by circumstances, there should be positive proof of the facts from which the inference or conclusion is to be drawn. The circumstances themselves must be shown, and not left to rest in conjecture; and, when shown, it must appear that the inference sought is the only one which can fairly and reasonably be drawn from these facts. People v. Harris, 136 N. Y. 429, 33 N. E. 65. * * * It is a settled principle in the law of negligence, which, it has been said, should never be lost sight of, that when the plaintiff's evidence is equally consistent with the absence as with the existence of negligence, the case should not be submitted to the jury, since, in such a case, the evidence fails to establish the essential fact. Baulec v. Railroad Co., 59 N. Y. 357."

In Tolman v. Railroad Co., 98 N. Y. 198, in an action for negligence causing death, it was held that the burden of establishing affirmatively freedom from contributory negligence is upon the plaintiff; that while, although there were no eyewitnesses of the accident, and although its precise cause and manner of occurrence are unknown, absence of contributory negligence may be established sufficiently to make it a question of fact for the jury by proof of such facts and surrounding circumstances as reasonably indicate or tend to establish that the accident might have occurred without negligence on the part of the deceased; yet if the facts and circumstances, coupled with the occurrence of the accident, do not indicate or tend to establish the existence of some cause or occasion therefor which is consistent with proper care and prudence, the inference of negligence is the only one to be drawn, and the defendant is entitled to a nonsuit. I am brought, therefore, to the conclusion that there was no evidence sufficient to establish that the decedent was free from contributory negligence, and that the judgment should be reversed.

JENKS, J., concurs.