DETERMINED IN THE

# THIRD DEPARTMENT

IN THE

# APPELLATE DIVISION,

## March, 1905.

---

LEMANDA J. IRISH, as Administratrix, etc., of ALGY J. IRISH, Deceased, Respondent, *v.* THE UNION BAG AND PAPER COMPANY, Appellant.

*Negligence — injury to one working near an electric wire from which the insulating material has been worn off.*

In an action brought to recover damages, resulting from the death of the plaintiff's intestate while in the employ of the defendant, it appeared that one of the defendant's buildings was fitted with electric wires running through a lead pipe; that at one point the lead pipe had been cut away for the purpose of connecting the wire therein with another wire; that at this point of the opening the exposed wire was protected only by rubber insulating material; that such insulation had been worn away by acid used in the defendant's business dripping upon it, thus causing the lead pipe to become charged with electricity of deadly voltage; that the defendant had knowledge of such leakage of electricity.

It further appeared that on the day in question the intestate, who was a prudent, industrious and sober workman, was directed to lay a platform in a room through which the lead pipe extended, and that in order to finish his work he was required to fit boards around the lead pipe; that about half an hour after the intestate was last seen alive his body was discovered lying against the lead pipe with a current of 500 volts passing through it; that a piece of board had been fitted around the back side of the lead pipe and that the other piece lay near him.

The evidence presented the question whether the intestate's foreman, who had been instructed to warn those working around the wires of the fact that there had been a leakage of electricity, had communicated such fact to the intestate.

*Held,* that a judgment entered upon a verdict in favor of the plaintiff should be affirmed;

That the questions whether the defendant had been guilty of negligence and whether the intestate had been free from contributory negligence were, upon the evidence, questions of fact for the jury to determine, and that they were justified in finding such questions in favor of the plaintiff.

PARKER, P. J., dissented.

APPEAL by the defendant, The Union Bag and Paper Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Washington on the 26th day of October, 1904, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 27th day of October, 1904, denying the defendant's motion for a new trial made upon the minutes.

Plaintiff sues as administratrix of Algy J. Irish, deceased, to recover damages for the death of said Irish, caused, as it is claimed, by the defendant's negligence. Defendant is the owner of sulphite mills at Fenimore, in Washington county. The acid tower faced toward the east a little longer north and south than east and west. The first basement or floor on the east side of the building was about six feet from the ground; on the second floor there are ten acid tubes, five on the east side and five on the west side of the building. Each tube rests on two stone piers about four feet apart; the piers starting from the ground and extending about eight feet toward the center of the building and up to the second floor. The tubes extend to the top of the building; the space under each tube is called a stall or alcove. At the bottom of the tube and about an inch from the floor is a six-inch hole through which the acid in the bottom of the tube is drained. The hole is protected by a plug. There is also another plug driven into the bottom of the tube from the stall and alcove and from which acid leaked or dripped down into the stall. There were seven electric wires which came into this building. The power furnished by these wires was used to operate this mill. The wires ran from the pulp mill through a vitrified tile duct underground into the acid tower, and came up into the tower through one of these alcoves or stalls and were attached to the north wall of the alcove by porcelain cleats. These wires were No. 4 copper wire, double rubber cover, White Cove, with lead jacket. When the wire reached the ceiling of this alcove a tap was

made on one of them and a wire carried to another part of the building. This caused a break in the lead covering or pipe and left a space that was not covered by the lead. The tap was made by first cutting off the lead covering perhaps for the distance of four or six inches and then the rubber covering for a little distance and then scraping the wire clean and winding one wire around the other wire, and then the joint was wound with some covering or rubber paint. The floor of the basement or first floor and the second floor was concrete or cement. There was a place of about four feet square in the alcove where the wire came up into the building which had not been concreted. About two weeks prior to the 13th day of April, 1903, the date of the accident, the deceased was directed by his foreman to put the board form in said alcove upon which to lay concrete. The deceased started the work that day, and it appears he did not then finish the job. There was a piece of board to be fitted around each side of these lead pipes. In order to finish this form it was necessary to put these pieces of boards down by these lead pipes. To fit the board around the wires, holes were bored in a board at the right distance from each wire and then the board was sawed lengthwise through the center of the holes so that each piece when placed in position made a complete form around the wires. The morning of the day of the accident the plaintiff's intestate was told by his foreman that he was going to have concrete put on the form in said alcove the next morning. The deceased was last seen alive about one-half hour before his body was discovered. A short time before this discovery a workman on the second floor of the tower heard a cry, and soon after the deceased's body was discovered in the alcove lying against one of these lead pipes. A piece of board had been fitted around the back side of the pipes, and the other piece lay near him on the wooden form. The floor of the alcove was wet. At the time of the discovery electricity was passing through the body of the deceased, which shortly after caused his death. A test afterwards made disclosed that about 500 volts of electricity were passing through said tube and through the body of the deceased. A jury found a verdict for the plaintiff upon which judgment was entered, from which judgment so entered and the order denying a motion for a new trial this appeal has been taken. Further facts appear in the opinion.

*Edgar T. Brackett*, for the appellant.

*Lewis E. Carr* and *A. D. Arnold*, for the respondent.

SMITH, J. :

The right of the jury to find that defendant's negligence caused this accident is not questioned by the appellant's counsel in his brief. The breaking of the lead pipe and the tapping of the wire left a part of the wire thus insulated exposed. The dripping of the acid upon this exposed part ate away the insulation so that the lead pipe in which the wire was encased became charged with electricity from the wire. Of the fact of this leakage of electricity the defendant had full knowledge, and the jury rightfully found that the defendant negligently failed to furnish a safe place in which the deceased was put to work, through which negligence his death was caused.

Upon this appeal this judgment is challenged by the defendant upon the ground that the case is barren of proof that the deceased was free from negligence which contributed to his death. He was working in the alcove alone. His death has taken away the sole witness of the accident. Defendant strongly contends that there is neither direct nor circumstantial evidence from which the jury have the right to draw the inference of due care upon his part.

In *Pruey* v. *N. Y. C. & H. R. R. R. Co.* (41 App. Div. 158; affd., 166 N. Y. 616) it appeared that about six o'clock on a dark, foggy morning in the early part of February, when there was an east wind blowing, the intestate, who was proceeding in a south-westerly direction upon a city street, approached a crossing where the street was intersected by eight railroad tracks operated by the defendant over which he was accustomed to pass daily in going to work, and that after waiting for a freight train to pass westerly upon the first track he started to walk diagonally over the crossing when he was struck and killed by an engine which was backing easterly on the second track at the rate of twenty miles an hour, displaying no light and giving no other signal of its approach. No one saw the accident or observed what precaution the deceased had taken before attempting to cross the tracks. The opinion of Justice SPRING, in part, says : " In a case where death ensues as a result of a collision of this kind, and where there is no eye-witness of the occurrence, there is a relaxation of the rule requiring strict proof

that the decedent was vigilant and observant as he advanced toward the track.   The regulation exists in its integrity, but the proofs presented may be inferential, may be dependent upon circumstances, and still be adequate to satisfy the court of the absence of contributory negligence."   In *Smedis* v. *Brooklyn & R. B. R. R. Co.* (88 N. Y. 13), Judge TRACY, in writing for the court, says : " While it is true that a traveler on approaching a railroad crossing is bound to look and listen for an approaching train, before undertaking to cross, it is only where it appears from the evidence that he might have seen, had he looked, or might have heard, had he listened, that a jury is authorized to find that he did not look and did not listen."   In *Wieland* v. *Delaware & Hudson Canal Co.* (167 N. Y. 24), Judge WERNER, in writing, says : " We are thus brought to the last and principal contention of the plaintiff, which is that the character of the crossing and the conditions surrounding the accident were such that the decedent could neither have seen nor heard the approach of the train with which he collided, in time to save himself.   If this is true the case is brought within the other rule laid down in (cases cited), to the effect that when the circumstances and conditions surrounding an accident are such that it is unavailing to look and to listen, the question whether a decedent was free from contributory negligence may be submitted to the jury."   In *Fejdowski* v. *D. & H. Canal Co.* (168 N. Y. 505), Judge VANN says : " While the general rule requires a traveler upon a public highway, who is about to cross at grade the track of a railroad, to both look and listen in order to learn whether a train is approaching, it is applied only ' when it appears from the evidence that he might have seen, had he looked, or might have heard, had he listened.' "   In *McHugh* v. *Manhattan R. Co.* (179 N. Y. 378) the head note in part reads : " The time when and the manner in which an accident happened to a railroad employee, whose death occurred through the alleged negligence of defendant in starting a train, is a question for the jury, where there is evidence that when last seen he was between a car and engine about to make a coupling ; that he had a very brief time to make it ; that no one saw him come out; that the coupling was made, and that his body was found at about the place it was made." In *Woodworth* v. *N. Y. C. & H. R. R. R. Co.* (55 App. Div. 23) there was no eye-witness of the accident, and there was no direct

proof that the deceased exercised care. He was an educated man, however, of temperate habits, careful and cautious in disposition, and under the circumstances the accident could have happened without negligence on his part, and he was allowed to recover. In *Palmer* v. *N. Y. C. & H. R. R. R. Co.* (112 N. Y. 234), where there was no eye-witness of the accident and no direct proof of plaintiff's freedom from contributory negligence, the plaintiff was allowed to recover. In that case the plaintiff's intestate was traveling in a covered buggy, and was crossing the tracks upon a highway where there were gates which were not operated by reason of the negligence of the gatekeeper. The engine was running from twenty to twenty-five miles an hour without giving any signal of its approach. The view of the railroad in the direction from which the engine approached was obstructed. It was held that both the negligence of the defendant and the contributory negligence of the plaintiff were properly submitted to the jury. At page 242, DANFORTH, J., in writing for the court, referring particularly to the open gates, says: "When, therefore, he moves on upon the track under an assurance of safety from those owning it, and from their servants, whose especial duty it is to keep their attention fixed upon it, and who have within their power the means of avoiding the infliction of injury, and whose business it is to use them so as to prevent danger, it is for the jury to say whether the traveler exercised that ordinary care and prudence which under the circumstances it would be natural to expect." Again, "The evidence shows that to a traveler coming from the north the view at the railroad toward the east was obstructed by apple and maple trees in full leaf, by buildings of various kinds, some belonging to the railroad company, while at the west, on track four, the track nearest the approaching traveler, not far from the crossing, a freight train stood, its engine taking water and discharging steam from the escape valves, and a stiff breeze blowing from the southwest, and so bringing the steam directly in the way. It was possible, notwithstanding, at certain points, to get a glimpse of the railroad at the east, and from lines and measurements exhibited by a surveyor, and the observations of other persons, we are asked to say, as matter of law, that the intestate, in not seeing the engine, was guilty of negligence. The size of the engine, its construction, permitting, if

seen, the inference that it was going away from the crossing, and not coming towards it, the presence of a train on the track nearest the traveler, the obstructions to the view, and, above all, the absence of the flagman and the extended arms of the gates and the way thus made open, are all to be considered, and their consideration was for the jury. The conduct of the intestate might have been influenced by them, and to what extent, it was for the jury to determine."

These cases have been cited to illustrate to what extent the courts have gone in allowing a jury to infer the absence of contributory negligence from circumstances, and in cases where death has closed the lips of the party who alone could tell how the accident happened. It is not necessary to discuss whether or not these cases have in fact made an exception to the rule that the plaintiff must prove affirmatively the absence of contributory negligence on the part of the deceased. They have, at least, authorized the jury to infer the absence of contributory negligence in crossing cases from the single fact that there were obstructions which might prevent the traveler approaching the crossing from seeing or hearing the approaching train, and also, as in the *Palmer* case cited, where the traveler has been given an assurance of safety by the open gates.

If such be the law, the case at bar presents, in my judgment, facts equally cogent from which the absence of contributory negligence may be inferred. That a servant may assume that the place in which he is to work is a safe one will be unquestioned. These wires were apparently thoroughly insulated, protected with lead casings so that the insulation could not be destroyed. This protection was to him an additional assurance of safety. He had no reason whatever to anticipate danger, and in this the case at bar would seem to give a stronger ground for inference of the want of contributory negligence than the cases cited. He was a prudent, industrious and sober workman. He was assigned to work close to these wires, the nature of his work requiring him to fit boards around them. I see no reason for withholding from the jury in the case at bar the right to infer the absence of contributory negligence which would authorize the jury to draw such inference in the cases cited.

This statement of the proposition would be challenged by the appellant's attorney by reason of the evidence of the foreman,

Brown, that when the deceased was put to work around the wires he told him he should be careful of the wires and not to touch them. He again swore: "After I had given him instructions about the form, I said, Be careful about the wires, don't touch them, or something of that kind." This evidence, however, was given by the defendant's servant, who had himself been notified that there was a leakage of electricity, and who had been instructed to warn those who were working around the wires of such fact. His failure to have warned the deceased would have been a breach of duty on his part which would have imperiled his position. With this apparent interest to swear that he had warned the deceased, and with the interest in the litigation which the law implies as a servant of the defendant, whether such warning was given as thus testified to was clearly a question for the jury to decide. At the close of the charge the defendant requested the court to charge that if the jury should find that Irish was warned as to the dangerous character of the wires before he was hurt, then he was called upon to exercise care additional to what would have otherwise been required of him, and, if he did not, it was negligence on his part that will defeat a recovery. In response to this request the court so charged. In support of this verdict, then, the court may assume that the jury has found that no such warning was given to the deceased. But if such warning had in fact been given, I am not at all clear that the court could then hold, as matter of law, that the deceased was guilty of contributory negligence. The nature or extent of the danger was not indicated to the deceased. He was not told why he must avoid touching the wires. The jury might have found that he had the right to infer that such a caution was for the purpose of not disturbing the wires rather than for the purpose of protecting him from danger. Under all the circumstances of this case, the jury have been permitted to find and have found that the deceased was free from contributory negligence. With the rule of law as thus held by the court, and with the finding as made, we are not convinced that we should interfere.

The judgment and order should, therefore, be affirmed.

All concurred, except PARKER, P. J., dissenting.

Judgment and order affirmed, with costs.