(139 App. Div. 375.)

### CLARK v. INTERNATIONAL PAPER CO.

(Supreme Court, Appellate Division, Third Department.   June 29, 1910.)

1. MASTER AND SERVANT (§ 286*)—SAFE PLACE TO WORK—NEGLIGENCE—QUESTION FOR JURY.

Where a belt which frequently slipped from a pulley was at times replaced while the machinery was in motion, the maintenance of an unguarded key passing into a groove in the pulley and in the shaft, and projecting from the shaft about one inch, was not as a matter of law the exercise of reasonable care on the part of the master, but the jury could find a negligent failure to properly guard the key.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 276*)—INJURY TO SERVANT—CAUSE OF ACCIDENT—EVIDENCE.

In an action for the death of an employé caught by a revolving shaft, evidence held to justify a finding that an unguarded key projecting from the shaft caused the accident.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 276.*]

3. MASTER AND SERVANT (§ 289*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Whether an employé, killed by being caught by an unguarded key in a revolving shaft, was guilty of contributory negligence, held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Washington County.

Action by Frances Clark, as administratrix, against the International Paper Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

C. J. Vert, for appellant.
Edward M. Angell, for respondent.

SMITH, P. J. The action is brought to recover for the death of plaintiff's intestate, claimed to have been caused by the defendant's negligence. The defendant was operating a paper mill. In the woodroom in said mill the main power shaft extends north and south. From this main shaft is supplied the power that runs 13 different machines. The main shaft is about 10 feet from the floor. Running along parallel with this main shaft is a countershaft, about the same height from the floor, which furnishes the power to what is called the "refiner." The power is transmitted from the main shaft to the countershaft in the ordinary way by a belt and pulleys, and from the countershaft to the refiner by a belt and pulleys. The province of this refiner was to take knots of wood and grind them up, so that the wood could be made into pulp, and from that into paper. The work was rough work, and by reason thereof the belt which connected the refiner with this countershaft would frequently slip off the pulley—as many as seven or eight times a day, one witness swears.

The plaintiff's intestate, a young man 21 years of age, was the oiler in this woodroom. His duties were to oil the several machines and to put the belts onto the pulleys whenever the belts would come off. He never did any oiling around the shafts or pulleys. On the afternoon of the 4th of November, 1908, the belt which connected the countershaft with the refiner came off from the pulley. Plaintiff's intestate got upon an old machine, which was out of use, called the "splitter," which was nearly under this pulley, for the purpose of putting the belt on. While engaged in putting the belt on he was in some way caught, flung around the shaft and to the floor, and killed. He had on trousers, a shirt, and a jacket. These were all stripped from him, and were found tightly wound around one side of the shaft near to the pulley. On that side of the shaft there was what is called a "key." It seems that in the shaft itself is a little groove, as well as in the hub of the pulley. This key passes into the groove both in the pulley and in the shaft, and thereby makes firm the pulley to the shaft. This key is about three-fourths of an inch in thickness, and about square at the end where it was turned up, so that it could be driven out from the pulley. Just beyond the hub of the pulley, therefore, it projected up from the shaft about one inch, revolving, of course, with the shaft and pulley. This key, thus projecting up, was in no way guarded, and the failure to guard the same is claimed to be the negligence which makes the defendant responsible for the death of plaintiff's intestate. I can see no greater

danger in a set screw than in a projecting key. They both project far enough from the shaft to catch the clothing of one working around, and to render dangerous any occupation which calls for action in the vicinity of the set screw or key. It is true that this was in a shaft 10 feet from the floor, but the frequency with which this belt came off from the pulley was such that the master had reason to anticipate that danger might come from the exposed condition of the key, and it cannot be said that reasonable care would not have required him to guard the same.

Nor can it be said that the plaintiff has not given any evidence which would authorize the jury to find that this unguarded key caused the death of plaintiff's intestate. It is true that he might have caught his hand between the pulley and the belt and have been drawn around. If that had been the cause of the accident, it is difficult to see why all his clothing should have been stripped from him, and wound so closely around the shaft. That fact of itself would seem to me to be sufficient to authorize the jury to say that the injury was caused by the exposed key, and not by the negligence of the intestate in permitting his hand to get between the pulley and the belt.

Nor can it be said as a matter of law that plaintiff's intestate was guilty of contributory negligence. The evidence is to the effect that at times the belt was put on when the machinery was in motion, and at times when the machinery was still. Plaintiff was not allowed to show the general practice, or that such course was pursued to the knowledge of and at the command of the foreman. Nor was she allowed to show that it was impracticable to put the belt on when the machinery was not in motion. Moreover, there were 13 machines operated by one central shaft. To shut off the power, so as to adjust any belt which might come off, would require the suspension of the work of these 13 machines. Plaintiff should, therefore, have been allowed to show that it was not the custom to shut off the power to put on a belt. It is true that this belt was on a countershaft, and by running off the belt on one pulley this shaft could have been stopped; but to put back the belt thus run off to connect the countershaft with the main shaft thereafter would present the same dilemma, whether to put the belt on while the shaft was in motion, or to stop the work of the other 12 machines while this was being put on. There is evidence to the effect that just before the accident he was seen to be fixing the belt, with his body about a foot or a foot and a half away from the pulley, and his jacket buttoned. He was not thereafter seen before his death. We are of opinion that this evidence requires the submission to the jury of the question of the contributory negligence of plaintiff's intestate, as well as the question of the defendant's negligence in causing the injury. Irish v. Union Bag & Paper Co., 103 App. Div. 45, 92 N. Y. Supp. 695, affirmed 183 N. Y. 508, 76 N. E. 1097.

The judgment should therefore be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment reversed, and new trial granted, with costs to appellant to abide event. All concur.