for it. * * * I have given him some heave cure once or twice, but it takes two good men to put a spoonful of medicine in his mouth. He seems to know very well what it means, and will almost climb the side of a barn to get away from it. I presume you have given him something for a cold before now. * * *"

Plaintiff had not testified in regard to the contents of the second letter, except to say that in it he demanded the return of the purchase price of the horse, and also that in it he stated that the horse was subject to the defendant's order, coupled with a request that he be informed what the defendant was going to do about it. The statements and opinions contained in the letter were self-serving, and not against the plaintiff's interest. His personal statements and opinions, with the general statement of opinions by every one that had seen the horse, and the sarcasm about the defendant's having given the horse "something for a cold," directly tended to prejudice the defendant and to make evidence against him in the minds of the jury. Its admission was error, and we cannot say that it did not affect the result. Thomas v. Gage, 141 N. Y. 506, 36 N. E. 385; Healy v. Malcolm, 77 App. Div. 69, 78 N. Y. Supp. 1043; Learned v. Tillotson, 97 N. Y. 1, 49 Am. Rep. 508; Havens v. Gilmoure, 83 App. Div. 84, 82 N. Y. Supp. 511; Ives v. Ellis, 169 N. Y. 85, 62 N. E. 138.

The judgment should be reversed, with costs in this court and in the court below. All concur, except HOUGHTON, J., not voting, not being a member of this court at the time this decision is handed down.

(109 App. Div. 465.)

## VOORHEES v. HUDSON RIVER TELEPHONE CO.*

(Supreme Court, Appellate Division, Third Department. November 15, 1905.)

1. MASTER AND SERVANT—CARE ON PART OF SERVANT—BURDEN OF PROOF.

In an action against a master for alleged negligence, resulting in the death of the servant, the plaintiff must show affirmatively that the deceased was free from negligence contributing to his death.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 908.]

2. SAME—SUFFICIENCY OF EVIDENCE.

In an action for injuries to a servant resulting in his death, evidence reviewed, and held insufficient to sustain the conclusion that the deceased was free from contributory negligence.

Chester, J., dissenting.

Appeal from Trial Term, Rensselaer County.

Action by George W. Voorhees, as administrator of the goods, chattels, and credits of Schuyler H. Voorhees, deceased, against the Hudson River Telephone Company. From a judgment for plaintiff, and an order denying a motion to set aside the verdict and for a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, and CHESTER, JJ.

Lewis E. Griffith, for appellant.

Jarvis P. O'Brien (George B. Wellington, of counsel), for respondent.

*For dissenting opinion, see 95 N. Y. Supp. 1167.

CHASE, J. Plaintiff's intestate was a lineman in the employ of the defendant, and was killed by the falling of a telephone pole on the 19th day of October, 1904. The pole in question was on the west side of a roadway running nearly north and south in or near the village of Hoosick, and attached to it were telephone and telegraph wires. On the 5th day of September, 1904, the pole, with the wires, fell into the street. It was again put up in a perpendicular position; the foot of the pole resting on the part from which it had been broken. The wires were on a slight curve that pulled the pole to the east, and a guy wire was fastened from the pole to a building situated west of the street. Some time between September 5th and October 19th a new pole was erected within 8 to 12 inches of the old pole, which new pole was designed to take the wires that were then fastened to the cross-arm of the old pole. The old pole was broken off from 2 to 4 inches below the surface of the ground. A person by ordinary observation would not notice whether the pole had been broken off unless he went to look at the foot of it. On the day of the accident the local manager of the defendant telephoned to the intestate that the Postal Telegraph Company had set a new pole in place of the old one and directed him to change the wires and to be careful. The local manager testified that he said to the intestate that there had been a new pole set to take the place of an old one somewhere in the village of Hoosick, and that it was an old pole, and to be careful and not take any chances. The intestate went to the place where the new pole was erected and climbed the new pole. He had a helper, and he asked the helper for a halter, and it was thrown to him, and with the halter the intestate tied the new and the old poles together at the top. The helper was then sent by the intestate on an errand, and shortly thereafter people near the location of the pole heard a crash, and found that the old pole had fallen, and that the intestate was under the pole near the top thereof, seriously injured. The wires had been removed from the cross-arm, and the cross-arm had been unbolted from the pole and lay on the ground near the pole, and the rope halter with which the poles had been tied together was lying on the ground near the pole untied and unbroken. The intestate died a few hours thereafter. On these facts the jury found the defendant negligent, and the intestate free from negligence contributing to the injury.

We think the verdict was against the evidence. The intestate knew that the old pole was about to be abandoned, and that the work to be performed by him in transferring the wires was to complete its abandonment. He had with him all necessary apparatus to safely perform the work. He was cautioned to be careful, because the pole was an old one. The only care required because of the fact of the pole being an old one was by reason of the danger that it might fall when the wires supporting it were removed. If the pole was in danger of falling, such danger was a necessary risk in transferring the wires. There is not the slightest evidence of any care on the part of the intestate, either in the examination of the old pole before climbing the new pole, or in connection with the work performed by him in transferring the wires. It may be assum-

ed that he ascertained that the pole was in danger of falling if the supports from the wires and guy were removed, because the first thing that he did upon climbing the new pole was to tie the two poles together at the top. The only evidence before us relating to the subject of tying poles together at the top before removing the wires is that such tying of the poles is only done when there is some visible danger of the old pole falling. If the tying had been properly done by the intestate, the old pole could not have fallen. What more than tying the poles together at the top could the intestate have done, if he had been expressly told that the old pole had been broken at the bottom, and that, unless secured, it would fall as soon as its supports were removed? The intestate, by what he did, admitted that he knew that the old pole was in danger of falling. Whether the intestate changed his position from the top of the new pole and climbed the old one, or was thrown to the ground in some other manner than while on the old pole at work, does not appear. Neither does it appear whether the guy wire that held the old pole from the west was broken or had been cut by the intestate. Just how the accident happened is a matter of conjecture, and the most probable conjecture is that the intestate, knowing that the old pole was in danger of falling as soon as the wires and guy were removed therefrom, tied it to the new pole with the halter, and then removed the wires and cut the guy, depending upon the halter to hold the old pole to the new one, and that by reason of the fact that the halter was insecurely tied by him it became untied and let the old pole fall, and that the intestate, being at least to some extent sustained by the old pole, fell with it and received the injuries which caused his death. The plaintiff was required to show affirmatively that the intestate was free from negligence contributing to his death. It was not necessary to establish such fact by direct evidence; but, where the circumstances are relied upon in the absence of direct evidence to show a lack of contributory negligence, they should point by a fair and reasonable inference to such conclusion.

The circumstances disclosed by the record now before us do not sustain the conclusion that the intestate was free from contributory negligence, and the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except CHESTER, J., who dissents.

---

(108 App. Div. 288.)

### LAFFAN v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. November 10, 1905.)

MASTER AND SERVANT—DEATH OF EMPLOYÉ—ASSUMPTION OF RISK.

An employé was killed while attempting to move a street car into a car barn. The car came to a stop on the curve leading into the barn, and the employé directed that leaders should be attached to the car platform and gave instructions to go ahead. The car did not move. He then walked into the space between the car and the wall of the barn, when the car moved and crushed him. He knew the situation and acted in view of that knowledge. *Held*, that he assumed the risk as a matter of law, precluding a recovery for his death.

95 N.Y.S.—45